UNITED STATES DISTRICT COURT

FOR THE

SOUTEHRN DISTRICT OF NEW YORK

| | |
|---|---|
| GIULIO MARIA PASINETTI, <br><br> Plaintiff, <br><br> -against- <br><br> ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI, JESSICA MOISE, ERIC J. NESTLER, and BARBARA G. VICKREY, <br><br> Defendants. | Docket No.: 24-cv-07688 <br><br> FIRST AMENDED COMPLAINT |

The Plaintiff, GIULIO MARIA PASINETTI, by and through counsel, Civil Rights Consortium, allege as follows:

**PRELIMINARY STATEMENT**

Plaintiff brings the instant action for relief from the Defendants violation of Plaintiff's right to make and maintain federal contractual relationships in violation of *42 U.S.C. § 1981*. Moreover, the Plaintiff moves for retaliation in violation of the Plaintiff's First Amendment right under the United States Constitution to commence a court action.

Furthermore, the Plaintiff proceeds pursuant *5 U.S.C. § 2302(b)(8)*, the Whistleblower Protection Act ("WPA"), where the Defendants, concerning Plaintiff's employment on United States' government contracts, took and/or threaten to take a personnel action with respect to the Plaintiff's employment because of his disclosure of information that he reasonably believes evidences violation of a law, rule, regulation, gross mismanagement, gross waste of funds, an abuse of authority, and a substantial and specific danger to public health or safety.

1

Additionally, the Plaintiff moves under the human rights laws of the City and State of New York for retaliation and being subjected to a hostile work environment. Furthermore, the Plaintiff' moves under New York State common law for tortious interference of a contract, and defamation.

## JURISDICTION

(1)     This Court has federal question jurisdiction over the instant action pursuant to *28 U.S.C. § 1331*, and supplemental authority pursuant to *28 U.S.C. § 1367*.

## VENUE

(2)     Pursuant to *28 U.S.C. § 1391*, the venue is proper as the material events have taken place in this judicial district.

## JURY DEMAND

(3)     Plaintiff respectfully demands a trial by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PARTIES

(4)     Plaintiff Giulio Maria Pasinetti is a licensed doctor (licensed in Europe) and educator with the Doctor with the Defendant School.

(5)     Defendant School is the primary academic branch of the Mount Sinai Health System ("Mount Sinai").

(6)     Defendant Jessica Moise is the grant officer for the Defendant Mount Sinai.

(7)     Defendant Eric J. Nestler is Dean of Mount Sinai's Academic Affairs & Chief Scientific Officer.

(8)     Defendant Barbara G. Vickery is the System Chair for Mount Sinai.

2

## FACTUAL BACKGROUND

(9)     The Plaintiff is employed with the Defendant School as an educator, although he is a licensed physician, licensed in Europe.

(10)    In June 2024, Plaintiff sued Defendant Mount Sinai for various due process violations in *Pasinetti v. Icahn School of Medicine at Mount Sinai, 24-cv-4510 (SDNY)(JMF)*.

(11)    Although, employed by the Defendant School, immediately following the Plaintiff's filing of proceedings in *Icahn School of Medicine at Mount Sinai, 24-cv-4510*, Defendants attempted to claim that Plaintiff was not an employee of the Defendant School.

(12)    The parties in *Icahn School of Medicine at Mount Sinai, 24-cv-4510*, seemed to have resolved the matter and so that action was voluntarily dismissed.

(13)    However, less than three (3) months following that dismissal, the Defendants continued waging a campaign of a hostile work environment against the Plaintiff and retaliation for his suing in *Pasinetti, 24-cv-4510*, reviving a disciplinary matter that, according to the Defendants had been resolved and disposed up, per their own instructions.

(14)    On or about August 28, 2024, the Defendants contacted the Plaintiff and informed the Plaintiff that the Defendants had just completed communication(s) with the National Institutes of Health ("NIH"), regarding approximately three (2) alleged statements of sexual harassment, in an alleged three (3) separate circumstances, which according to the Defendants, occurred at "off-campus work related [social] events" where staff were drinking alcohol and socializing.

(15)    However, as noted herein, Defendants' alleged communication was a lie, feigned for malicious purposes of trying to illegally oust the Plaintiff from his employment.

(16)    According to the Defendants, Mr. Pasinetti is alleged to have made several statements at an alcohol infused social event that the Defendants claimed warranted their investigation and punishment of Mr. Pasinetti.

(17) In a May 16, 2023, letter ("Disciplinary Recommendation Letter" or "DRL"), the Defendants went on to say, "Human Resources investigated these allegations and interviewed numerous current and former staff members who corroborated that [Mr. Pasinetti] made these offensive statements at work related events off-campus."

(18) Moreover, the DRL went on to conclude in pertinent part, "Accordingly, I recommend that he be issued a final warning and restricted from having staff related events outside the office where alcohol and/or other controlled substances are served. Furthermore, I recommend that the School perform at least quarterly[,] climate reviews of his laboratory for the foreseeable future, and that he also attend a School-offered course related to diversity training or unconscious bias."

(19) According to the Defendants' letter, Mr. Pasinetti "[had] been counseled in the past for abusive, retaliatory behavior," in insinuating that the underlying allegations were part of the pattern, going on to say, "His continuation of this behavior warrants progressive discipline."

(20) However, the DRL is inconsistent in its allegations, alleging in one instance that all of the alleged statements of sexual harassment occurred off-campus, during alcohol infused social events, while simultaneously alleging that one of the allegations of sexual harassment occurred on campus in the Mr. Pasinetti's laboratory, during work.

(21) In another letter, also dated May 16, 2023, ("Disciplinary Action Letter" or "DAL"), the Defendants stated in pertinent part,

> I am taking this action based on the serious allegations of sexual harassment and unprofessional behavior towards your laboratory staff at work related events off campus. Your prior record of such behavior and counseling for such, the continuing pattern of such unacceptable behavior, and your refusal to acknowledge the unacceptable nature of your behavior warrants disciplinary action in the form of a *final warning*, restrictions on the scope of work events outside the office and closer monitoring of the climate with your laboratory staff. Specifically, you are prohibited from having staff related events inside/outside the office and serving any alcohol and/or other controlled substances at such events. Furthermore, the School will perform regular (at least quarterly) climate reviews of your laboratory for the

foreseeable future. Finally, you are also expected to register for and attend at least one unconscious bias training provided by the Office of Diversity and Inclusion within the next six (6) calendar months….

*I also note that this discipline relates solely to the complaints of harassment and abusive behavior. As you know, there is also an ongoing, independent research misconduct investigation[1] and any findings and potential discipline arising from that investigation are entirely separate from this determination.* You have a right to appeal this decision to [the School's] Faculty Discipline Tribunal by written submission to the President of the Faculty Council…The appeal must be submitted by certified mail, postmarked no later than ten (10) business days following your receipt of this letter. **<u>If no request for appeal is filed, this discipline will become final.</u>**

(22)   In closing the DAL stated in pertinent part, "Any future similar conduct-related incidents will result in termination of your employment. Finally, if it is discovered that you retaliate in any way with regard to this incident, you will be considered out of compliance with our Code of Conduct, and your will be subject to immediate termination."

(23)   Mr. Pasinetti registered, took, and completed the six classes of unconscious bias training, as required, irrespective of Mr. Pasinetti's belief that he had done nothing wrong and that the allegations were untrue as alleged.

(24)   Therefore, having reviewed [the School's] disciplinary procedure which the DAL echoed, and based upon the DAL's unequivocally stating that "**<u>If no request for appeal is filed, this discipline will become final</u>**", Mr. Pasinetti believed the matter to have been final and put the matter behind him.

(25)   According to the DRL and the DAL, the Defendants and Mr. Pasinetti had previously been through such events and processes, with this time, according to the DAL, to be the last and final.

---

[1] Hereinafter referred to as "Research Misconduct Investigation" or "RMI."

(26)    However, on or about August 28, 2024, well more than a year after the Defendants had declared the purely internal matter to be final, something different and unusual occurred.

(27)    In this instance, unlike the other previous allegedly similar events and process, the Defendants summoned Mr. Pasinetti to a meeting, and informed Mr. Pasinetti of a recent communication the Defendants had with NIH, in which the Defendants' admitted publishing the DRL and DAL to the NIH.

(28)    Moreover, the Defendants alleged that in response the NIH ordered the Defendants to further punish Mr. Pasinetti by restricting his work, effectively placing Mr. Pasinetti in a proverbial rubber room of sorts, as he continued to be employed by the Defendants, not only without the ability to do the work that he (i.e., Dr. Pasinetti), is one of few, if not the only expert in his field for the Defendants with the expertise to conduct such work, but also, effectively restricting Mr. Pasinetti from conducting any other work.

(29)    Defendants' publication of the DRL and DAL was malicious and done with the intent to destroy Mr. Pasinetti's reputation as such had never occurred previously, in the other alleged similar incidences, and where there exists no requirement under the NIH's rules, regulations, and protocol, to receive that the Defendants published DRL and DAL to the NIH.

(30)    Furthermore, Defendants' publication of the DRL and DAL was relation, where such publication and republication to third parties including the NIH, came on the heels of the Defendants' flagrant violations of Mr. Pasinetti's due process rights in the above-mentioned RMI, which had been filed June 12, 2024, before the matter was subsequently revolved and rendered moot.

(31)    Furthermore, Defendants' underlying actions constitute a constructive termination of Mr. Pasinetti's employment, as he has been reduced to nothingness in the workplace.

(32) However, the Defendants' retaliation and hostile work environment did not end here, where the Defendants in late September 2024 to early October 2024, effectively terminated Mr. Pasinetti's right and privilege to employ (i.e., hire) staff to work with him at Mount Sinai.

(33) Moreover, the Defendants' retaliation and hostile work environment resulted in their contacting the United States Department of Veteran Affairs ("VA"), a wholly independent entity, distributing to the VA the DRL and DAL and lobbying that the VA terminate Mr. Pasinetti's grant work with the VA.

(34) Mr. Pasinetti works for/at the VA conducting similar work, pursuant to NIH issued contracts.

(35) It is notable that, assuming *arguendo* that the Defendants' claims of the NIH's suspension of Dr. Pasinetti's work on any NIH contract at the Defendant school, has not occurred at the VA.

(36) That is, the NIH has not contacted the VA and instructed it to suspend Dr. Pasinetti's work on any NIH issued contracts.

(37) Nonetheless, the Defendants, independent of and absent, the NIH's having contacted the VA, contacted and attempted to harass the VA's personnel in furtherance of gaining VA's suspension of Dr. Pasinetti's work at the VA on NIH issued contract.

(38) Moreover, the Defendants' harassment has spread to staff and employees who have and continue to work with Dr. Pasinetti in efforts to stop them.

(39) Dr. Pasinetti's claims illustrate that the Defendants are mismanaging government contracts.

(40) For example, on the initial NIH Contract suspension, the Defendants feigned basis of removal comes in the last year of the $9 million contract, concerning about $1.5 million in

remaining funds issued, in which the Defendants seek to removal Dr. Pasinetti despite his being the only persons with expertise to work on the study.

(41)    Similarly, the Defendants removed an important investigator affiliate of Dr. Pasinetti to work on the study, with all such removals resulting in individual defendants pocketing more money from the funds awarded, at the expense of the optimum quality of the government study.

(42)    Therefore, Mr. Pasinetti moves for relief.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### (DEFERMATION *PER SE*)

**PLAINTIFF BRINGS A CLAIM OF DEFAMATION *PER SE* WHERE THE DEFENDANT'S PUBLICATION AND REPUBLICATION OF THE OTHERWISE CONFIDENTIAL MATTERS INJURED MR. PASINETTI IN HIS PROFESSION.**

(43)    Plaintiff repeats and restates as if stated herein all averments set forth in Paragraphs "1" through "42" above.

(44)    In publishing and republishing the DRL and the DAL to the NIH the Defendant's consequentially did so knowingly advancing false statements that tend to expose a person to public contempt, hatred, ridicule, aversion, or disgrace.

(45)    In publishing and republishing the DRL and the DAL to the NIH the Defendant did so without privilege or authorization, as there was no requirement to present the DRL and the DAL both of which assert false statements of Mr. Pasinetti in addition to the allege claims of sexual harassment, which Mr. Pasinetti denies, where the NIH constitutes a third party.

(46)    The Defendants unnecessary action, amounted to faulty judgment, negligence, and caused special harm and defamation *per se*, injuring Mr. Pasinetti in his profession.

(47)    The Defendant acted maliciously as it was not required to engage in the NIH publication and republication.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(HOSTILE WORK ENVIRONMENT)**

**PLAINTIFF BRINGS A CLAIM OF HOSTILE WORK ENVIROMENT IN VIOLATION OF THE CITY AND STATE HUMAN RIGHTS LAWS.**

(48)    Plaintiff repeats and restates as if stated herein all averments set forth in Paragraphs "1" through "47" above.

(49)    Have challenged the Defendant for violating his due process rights in the RMI, the Defendant's subjected the Plaintiff to a hostile work environment permeated with discriminatory intimidation, ridicule, and insult, sufficiently severe or pervasive to alter the terms or conditions of Mr. Pasinetti's employment, in which the Defendant arbitrarily disturbed Mr. Pasinetti's prior punishment of May 2023, which Defendant had declared to be final, punished Mr. Pasinetti a second time, this time more harshly, and changing the terms and conditions of Mr. Pasinetti's employment with the Defendant.

(50)    Defendant's arbitrarily hostile act, punishing Mr. Pasinetti a second time, more harshly, constitutes conduct that severe or pervasive enough to create an objectively hostile or abusive work environment, one that a reasonable persons would find hostile or abusive.

(51)    The Defendant's conduct is not isolated as it set in place an effectively permanent and therefore, ongoing change to the terms and conditions of Mr. Pasinetti's employment, designed purely for purposes of (i) intimidating Mr. Pasinetti for exercising his First Amendment right to file a complaint in court to challenge violation of his constitutional right to due process, and (ii) ridiculing and insulting Dr. Pasinetti.

## AS AND FOR A THIRD CAUSE OF ACTION
## (REALIATION - FIRST AMENDMENT (STATE AND FEDERAL CONSTITUTIONS))

**PLAINTIFF BRINGS A CLAIM OF RETALIATION AGAINST THE DEFENDANTS FOR VIOLATION OF HIS RIGHT TO FREE SPEECH/EXPRESSON UNDER THE FIRST AMENDMENT OF THE STATE AND FEDERAL CONSTITUTIONS.**

(52)   Plaintiff repeats and restates as if stated herein all averments set forth in Paragraphs "1" through "51" above.

(53)   At all relevant times, Mr. Pasinetti had engaged in protected activity, namely, the filing of his federal complaint in *Pasinetti v. the School, Civil Action No. 24-4510 (S.D.N.Y.)*, on June 12, 2024, for violations of Mr. Pasinetti's right to due process during the RMI.

(54)   At all relevant times, the Defendants were aware that Mr. Pasinetti participated in that protected activity as the parties collectively agreed that such had become moot as to matters of the RMI.

(55)   Mr. Pasinetti has suffered adverse employment action based upon that activity as he has been placed in the proverbial rubber room, thereby changing the core terms and conditions of Mr. Pasinetti's employment.

(56)   With Mr. Pasinetti's filing of the federal action, having occurred less three months before Mr. Pasinetti had effectively suffered double jeopardy being punished a second time for the relevant underlying matter that the Defendant, more than a year early had declared to be final.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (DEPRIVATION OF RIGHT CONTRACT)

**PLAINTIFF BRINGS A CLAIM OF VIOLATION OF THE PLAINTIFF RIGHT TO CONTRACT UNDER *42 U.S.C § 1981*.**

(57)   Plaintiff repeats and restates as if stated herein all averments set forth in Paragraphs "1" through "56" above.

(58)   At all relevant times, Mr. Pasinetti possessed property rights interests in his grant work for which he had been employed by both the Defendants Mount Sinai and the VA.

(59)   Defendants unlawfully deprived the Plaintiff of those property rights.

(60)   As a result of that unconstitutional deprivation the Plaintiff has been injured.

## AS AND FOR A FIFTH CAUSE OF ACTION
## (TORTIOUS INTERFERENCE WITH A CONTRACT)

**PLAINTIFF BRINGS A CLAIM OF TORTIOUS INTERFERENCE OF A CONTRACT.**

(61)   Plaintiff repeats and restates as if stated herein all averments set forth in Paragraphs "1" through "60" above.

(62)   At all relevant times, Mr. Pasinetti was contractually engaged with the VA.

(63)   The Defendants were aware of that contractual relationship.

(64)   The Defendants knowingly proceeded to destroy that contractual relationship, disclosing the private matters of the DRL and DAL, well more than a year after the matter had been closed, confidentially so.

(65)   Plaintiff has been injured by the tortious interference.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (EMOTIONAL DISTRESS)

**PLAINTIFF BRINGS A CLAIM OF NEGLIGENT INFLICTION OF EMOITONAL DISTRESS.**

(66)    Plaintiff repeats and restates as if stated herein all averments set forth in Paragraphs "1" through "65" above.

(67)    Defendant breached its duty to the Plaintiff not to abuse its disciplinary authority and to do so on fabricated basis.

(68)    The Defendant's breach unreasonably endangered the Plaintiff's well-being.

(69)    The Defendant's breach involved extreme conduct.

(70)    The Defendant's breach involved outrageous conduct.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## (DEPRIVATION OF RIGHT CONTRACT)

**PLAINTIFF BRINGS A CLAIM OF WHISTLEBLOWER RETALAITION PURSUANT TO 5 U.S.C § 2302(b)(8).**

(71)    Plaintiff repeats and restates as if stated herein all averments set forth in Paragraphs "1" through "70" above.

(72)    In *Pasinetti v. Icahn School of Medicine at Mount Sinai, 24-cv-4510* and the instant case more so, Plaintiff complains about the Defendants' mismanagement of funds awarded by the United States, via the NIH, whereby the Defendants have operated pursuant to a campaign to terminate more funds for themselves.

(73)    Similarly, as such basis action removes the Plaintiff, the only persons with expertise on contracts for which the Plaintiff filed on the Defendant School's behalf, as the only person with expertise for the Defendant School to perform the core work on the underlying contract, the studies, which are for the public health and safety

of the United States citizens, thereby directly compromises such, and constitutes a specific danger.

(74)   Furthermore, as such basis action removes the most optimum qualified persons, in addition to the Plaintiff, to perform essential work on the underlying contract, the studies, which are for the public health and safety of the United States citizens, thereby directly compromises such, and constitutes a specific danger.

(75)   Moreover, the Defendants actions violate the First and Fourteenth Amendment of the United States Constitution, as well as rules and regulations of the NIH.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief and judgment, as follows:

(a)   Awarding compensatory damages and punitive damages, to be proven after a trial;

(b)   Awarding extraordinary, equitable, and/or injunctive relief as permitted by law, equity, and the state law, including moving expenses to Plaintiffs;

(c)   Awarding all the plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)   Such other and further relief as this Court may deem just and proper.

Dated: Woodhaven, New York,
           November 21, 2024

CIVIL RIGHTS CONSORTIUM.
ATTORNEYS FOR THE PLAINTIFFS

BY: *E. Dubois Raynor, Jr.*
E. Dubois Raynor, Esq.
Managing Attorney
89-07 Jamaica Avenue
Woodhaven, New York 11421
(855) 246-2776, Ext. 702

13