# UNITED STATES DISTRICT COURT

## FOR THE

## SOUTEHRN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **GIULIO MARIA PASINETTI,** ) | **Docket No.: 24-07688** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| **-against-** ) | |
| ) | |
| **ICAHN SCHOOL OF MEDICINE AT MOUNT** ) | |
| **SINAI, JESSICA MOISE, ERIC J. NESTLER, and** ) | |
| **BARBARA G. VICKREY,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF GIULIO MARIA PASINETTI'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR A RESTRAINING ORDER, PENDING PROCEEDOINGS

Dated: December 2, 2024
          Woodhaven, New York

Counsel for the
<u>Plaintiff: Giulio Maria Pasinetti</u>

CIVIL RIGHTS CONSORTIUM
          *BY E. Dubois Raynor, Esq. on the brief*
          *By Of Counsel Kelsey Monaghan, Esq. on oral argument*
89-07 Jamaica Avenue
Woodhaven, New York 11421
(855) 246-2776 Ext. 804 Telephone

## PRELIMINARY STATEMENT

Plaintiff Giulio Maria Pasinetti moves the Court for injunctive relief, namely a restraining order against the Defendants, restraining said Defendants from abusing governmental privileges and resources, which would otherwise implicate and compromise Mr. Pasinetti's right to due process and constitutional fairness, in pursuit of Defendants' baseless and malicious pursuit to destroy Mr. Pasinetti's career and reputation, globally.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 2

FACTUAL BACKGROUND............................................................................................ 3

ARGUMENT .................................................................................................................... 5

I.      POINT ONE: THE COURT SHOULD GRANT PLAINTIFF'S APPLICATION FOR A
        TEMPORARY RESTRAINING ORDER, PRELCUDING THE DEFENDANTS FROM
        REMOVING OR INTERFERING WITH MR. PASINETTI'S WORK IN ABSENCE OF
        DUE PROCESS, NAMELY NOTICE AND AN OPPORUTNITY TO BE HEARD
        BEFORE THE TAKING OF ANY ADVERSE EMPLOYMENT ACTION ................... 8

II.     POINT TWO: THE COURT SHOULD GRANT INJUNCTIVE RELIEF IN THAT MR.
        PASINETTI HAS SHOWN THAT HE WOULD SUFFER IRREPARABLE HARM IN
        THE ABSENCE OF AN INJUNCTION .......................................................................... 13

III.    POINT THREE: THE COURT SHOULD GRANT INJUNCTIVE RELIEF IN THAT
        PLAINTIFF HAS SHOWN THAT THE BALANCE OF HARDSHIPS TIPS
        DECIDEDLY IN PLAINTIFF'S FAVOR, AND FOR THE SAME REASONS,
        ISSUANCE OF AN INJUNCTION IS IN THE PUBLIC INTEREST ............................. 14

CONCLUSION .....................................................................................................................16

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Agudath Israel of America v. Cuomo,*
    *983 F.3d 620 (2d Cir. 2020)* ...........................................................................13


*Allessi v. New York State Dep't of Corrections and Community Supervision,*
    *16 F.Supp.3d 221, 227 (W.D.N.Y. 2014)* ...........................................13


*American Mfrs. Mut. Inc. Co. v. Sullivan,*
    *526 U.S. 40 (1999)* .................................................................................8


*Arnett v. Kennedy,*
    *416 U.S. 134 (1974)* ...............................................................................10


*Bell v. Burson,*
    *402 U.S. 535 (1971)* .................................................................................9


*Benisek v. Lamone,*
    *585 U.S. 155 (2018)* .................................................................................9


*Cafeteria Workers v. McElroy,*
    *367 U.S. 886 (1961)* ...............................................................................10


*Chambers v. Baltimore etc.,*
    *207 U.S. 142 (1907)* ...............................................................................13


*Donohue v. Mangano,*
    *886 F.Supp.2d 126, 150 (E.D.N.Y. 2012)* ...........................................13


*Elrod v. Burns,*
    *427 U.S. 347 (1976)* ...............................................................................13


*FDIC v. Mallen,*
    *486 U.S. 230 (1988)* ...............................................................................11


*Houser v. Feldman,*
    *2021 WL 4963534 (E.D. Pa, Oct. 26, 2021)* .........................................14


*Jolly v. Coughlin,*
    *76 F.3d 468, 482 (2d Cir. 1996)* ...........................................................13


*Martinez v. McAleenan,*
    *385 F.Supp.3d 349 (S.D.N.Y. 2019)* .....................................................11


*Mathews v. Eldridge,*

*424 U.S. 319 (1976)* ...................................................................................................... 10

*Moriello v. Bd of Immigration Appeals,*
    *2024 WL 1349588 (M.D.N.C., Mar. 29, 2024)* ..................................................... 9

*Morrissey v. Brewer,*
    *408 U.S. 471 (1972)* ............................................................................................... 10

*Nnebe v. Daus,*
    *931 F.3d 66 (2d Cir. 2019)* ..................................................................................... 8

*Paul v. Davis,*
    *424 U.S. 693, 710 (1976)* ....................................................................................... 10

*Pawelsky v. Cnty of Nassau etc.,*
    *2023 WL 4931886 (EDNY, July 31, 2023)* ........................................................... 9

*Pawelsky v. Co. of Nassau, New York,*
    *684 F.Supp.3d 73 (E.D.N.Y. 2023)* ....................................................................... 9

*Pursell v. Horn,*
    *187 F.Supp.2d 260 (W.D. Pa. 2022)* ...................................................................... 9

*Supplement Manufacturing Partner, Inc. etc. v. Healthy Again, LLC et. al.,*
    *2023 WL 5278110 (E.D.N.Y., Aug. 16, 2023)* ..................................................... 14

*Spinelli v. City of New York,*
    *579 F.3d 160 (2d Cir. 2009)* ................................................................................... 11

*Weisshaus v. Cuomo,*
    *512 F.Supp.3d 379, 3589 (W.D.N.Y. 2021)* ......................................................... 13

*Winter v. Nat'l Res. Def. Council, Inc.,*
    *55 U.S. 7 (2008)* ..................................................................................................... 9

**<u>Statutes</u>**

*5th Amendment U.S. Const.* ...............................................................................................8

*14th Amendment U.S. Const.* ...........................................................................................8

*42 C.F.R. § 93* ...................................................................................................................14

*42 C.F.R. § 93.310(c)* .......................................................................................................14

## FACTUAL BACKGROUND

Plaintiff Giulio Maria Pasinetti, a doctor, is a licensed physician, licensed to practice medicine in Europe, and an educator with the Defendant Icahn School of Medicine at Mount Sinai ("the School"), where Mr. Pasinetti is also a practicing scientist. *Exhibit 1*. The School employs Mr. Pasinetti in his capacity as a scientist and educator, who happens to be licensed to practice medicine. For about five (5) decades, Mr. Pasinetti has established an esteemed reputation in science and medicine, here in the United States, and globally in Europe. *Id.* However, the Defendants, acting at the behest of a third party, who years ago, for his own personal predilections, declared that he would find a way to terminate Mr. Pasinetti's employment, have undertaken a series of malicious and avert campaigns, as described herein, to terminate Mr. Pasinetti's employment and destroy Mr. Pasinetti's respected global reputation in science and medicine. *Id.*

In June 2024, Plaintiff sued Defendant Mount Sinai for various due process violations in *Pasinetti v. Icahn School of Medicine at Mount Sinai, 24-cv-4510 (SDNY)(JMF)*. *Id.* However, the parties seemed to have resolved the matter and unworkable differences, and so that action was dismissed. *Exhibit 1*. However, less than three (3) months following that dismissal, the Defendants continued waging a campaign of a hostile work environment against the Plaintiff. *Id.* However, the Defendants' campaign took even more explicitly wildly malicious, and retaliatory proportions for Mr. Pasinetti's suing Defendants in *Pasinetti, 24-cv-4510*, reviving DAL disciplinary matter that, according to the Defendants had been resolved and disposed up, per their own instructions well more than a year earlier. *Exhibit 1*.

On or about August 28, 2024, the Defendants contacted the Plaintiff and informed the Plaintiff that the Defendants had just completed communication(s) with the National Institutes of Health ("NIH"), regarding approximately three (2) alleged statements of sexual harassment, in an alleged three (3) separate circumstances, which according to the Defendants, occurred at "off-campus work related [social] events" where staff were drinking alcohol and socializing. *Id.* However, as noted herein, Defendants' alleged communication was a lie, feigned for malicious purposes of trying to illegally oust the Plaintiff from his employment. *Id.* According to the Defendants, Mr. Pasinetti was alleged to have engaged in three (3) acts of harassment. *Id.*

In a May 16, 2023, letter ("Disciplinary Recommendation Letter" or "DRL"), the Defendants went on to say, "Human Resources investigated these allegations and interviewed numerous current and former staff members who corroborated that [Mr. Pasinetti] made these offensive statements at work related events off-campus." *Id.* Moreover, the DRL went on to conclude in pertinent part, "Accordingly, I recommend that he be issued a final warning and restricted from having staff related events outside the office where alcohol and/or other controlled substances are served. *Id.* Furthermore, I recommend that the School perform at least quarterly[,] climate reviews of his laboratory for the foreseeable future, and that he also attend a School-offered course related to diversity training or unconscious bias." *Id.*

According to the Defendants' letter, Mr. Pasinetti "[had] been counseled in the past for abusive, retaliatory behavior," in insinuating that the underlying allegations were part of the pattern, going on to say, "His continuation of this behavior warrants progressive discipline." *Id.* However, the DRL is inconsistent in its allegations, alleging in one instance that all of the alleged statements of alleged harassment occurred off-campus, during alcohol infused social

events, while simultaneously alleging that one incident on campus in the Mr. Pasinetti's

laboratory, during work. *Id.*

In another letter, also dated May 16, 2023, ("Disciplinary Action Letter" or "DAL"), the

Defendants stated in pertinent part,

> I am taking this action based on the serious allegations of sexual harassment and
> unprofessional behavior towards your laboratory staff at work related events off
> campus. Your prior record of such behavior and counseling for such, the
> continuing pattern of such unacceptable behavior, and your refusal to
> acknowledge the unacceptable nature of your behavior warrants disciplinary
> action in the form of a *final warning*, restrictions on the scope of work events
> outside the office and closer monitoring of the climate with your laboratory staff.
> Specifically, you are prohibited from having staff related events inside/outside the
> office and serving any alcohol and/or other controlled substances at such events.
> Furthermore, the School will perform regular (at least quarterly) climate reviews
> of your laboratory for the foreseeable future. Finally, you are also expected to
> register for and attend at least one unconscious bias training provided by the
> Office of Diversity and Inclusion within the next six (6) calendar months….
>
> *I also note that this discipline relates solely to the complaints of harassment and
> abusive behavior. As you know, there is also an ongoing, independent research
> misconduct investigation[1] and any findings and potential discipline arising from
> that investigation are entirely separate from this determination.* You have a right
> to appeal this decision to [the School's] Faculty Discipline Tribunal by written
> submission to the President of the Faculty Council…The appeal must be
> submitted by certified mail, postmarked no later than ten (10) business days
> following your receipt of this letter. **If no request for appeal is filed, this
> discipline will become final.** *Id.*

In closing the DAL stated in pertinent part,

> Any future similar conduct-related incidents will result in termination of your
> employment. Finally, if it is discovered that you retaliate in any way with regard
> to this incident, you will be considered out of compliance with our Code of
> Conduct, and your will be subject to immediate termination.

Mr. Pasinetti registered, took, and completed the unconscious bias training, as required,

irrespective of Mr. Pasinetti's belief that he had done nothing wrong and that the allegations

were untrue as alleged. *Id.* Therefore, having reviewed [the School's] disciplinary procedure

---

[1] Hereinafter referred to as "Research Misconduct Investigation" or "RMI."

which the DAL echoed, and based upon the DAL's unequivocally stating that "**If no request for appeal is filed, this discipline will become final**", Mr. Pasinetti believed the matter to have been final and put the matter behind him. *Id.* According to the DRL and the DAL, the Defendants and Mr. Pasinetti had previously been through such events and processes, with this time, according to the DAL, to be the last and final. *Id.* However, on or about August 28, 2024, well more than a year after the Defendants had declared the purely internal matter to be final, something different and unusual occurred.

In this instance, unlike the other previous allegedly similar events and process, the Defendants summoned Mr. Pasinetti to a meeting, and informed Mr. Pasinetti of a recent communication the Defendants had with NIH, in which the Defendants' admitted publishing the DRL and DAL to the NIH. *Id.* Moreover, the Defendants alleged that in response the NIH ordered the Defendants to further punish Mr. Pasinetti by restricting his work, effectively placing Mr. Pasinetti in a proverbial rubber room of sorts, where he continued to be employed by the Defendants, not only without the ability to do the work that was hired by the Defendants to do, but also as one of the few, if not the only experts employed by the Defendants as to such work, effectively restricting Dr. Pasinetti from conducting any other work. *Id.*

Defendants' publication of the DRL and DAL was malicious and done with the intent to destroy Mr. Pasinetti's reputation as such had never occurred previously, in the other alleged similar incidences, and where there exists no requirement under the NIH's rules, regulations, and protocol, to receive that the Defendants published DRL and DAL to the NIH. Furthermore, Defendants' publication of the DRL and DAL was retaliation, where such publication and republication to third parties including the NIH, came on the heels of the Defendants' flagrant

violations of Mr. Pasinetti's due process rights in the above-mentioned RMI, which had been filed June 12, 2024, before the matter was subsequently revolved and rendered moot. *Id.*

Furthermore, Defendants' underlying actions constitute a constructive termination of Mr. Pasinetti's employment, as he has been reduced to nothingness in the workplace. *Id.* However, the Defendants' retaliation and hostile work environment did not end here, where the Defendants in late September 2024 to early October 2024, effectively terminated Mr. Pasinetti's right and privilege to employ (i.e., hire) staff to work with him at Mount Sinai. *Id.* Moreover, the Defendants' retaliation and hostile work environment resulted in their contacting the United States Department of Veterans Affairs ("VA"), a wholly independent entity, distributing to the VA the DRL and DAL and lobbying that the VA terminate Mr. Pasinetti's grant work with the VA. *Id.*

With each passing day, the Defendants' retaliation and hostile work environment conduct seems to increase. *Id.* It is not enough that the Defendants leveled the stale DRL and DAL allegations against Mr. Pasinetti. They went further, harassing Mr. Pasinetti's colleagues at the VA, initially attempting to pressuring colleagues to falsely accuse Mr. Pasinetti of harassment while working at the VA. *Id.* Dr. Pasinetti, has worked in his dual capacity as a scientist working government contracts at the VA and the School since about 2003. For such work, Mr. Pasinetti receives NIH grant funding which the Defendants, not the NIH, have baselessly blocked, all without affording Dr. Pasinetti, any due process.

Dr. Pasinetti's work on government contracts requires the Defendants' timely approval of resources, including essential chemicals for laboratory operations. However, Defendants have unduly interfered and compromised the work on the U.S. Government scientific studies. Having failed to get the V.A. to stop allowing Dr. Pasinetti's work and funding, in late November 2024,

Defendant Nestler contacted the V.A. claiming that the quality of Dr. Pasinetti's work was such

that Dr. Pasinetti's must be stopped. When asked for proof, Defendant Nestler conceded that he

had no such proof. Therefore, Plaintiff Mr. Pasinetti, moves the Court to restraining the

Defendants from engaging undue actions that would otherwise violate Mr. Pasinetti's right to

due process were it the case that such conduct was at the behest of partnership of the underlying

governmental entities.

**ARGUMENT**

**POINT ONE**

**THE COURT SHOULD GRANT PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER, PRELCUDING THE DEFENDANTS FROM REMOVING OR INTERFERING WITH MR. PASINETTI'S WORK IN ABSENCE OF DUE PROCESS, NAMELY NOTICE AND AN OPPORUTNITY TO BE HEARD BEFORE THE TAKING OF ANY ADVERSE EMPLOYMENT ACTION.**

The Defendants fishing expedition with the VA and claims that it was acting pursuant to

a communication and instruction of the NIH must be enjoined in absence of a showing by

Defendants that they provided the notice required under 5th and 14th Amendments of the United

States Constitution and provided Mr. Pasinetti an opportunity to be heard prior to implementing

the adverse employment action.

"The Fourteenth Amendment provides that 'no state shall…deprive any person

of…property, without due process of law." *Nnebe v. Daus, 931 F.3d 66, 80 (2d Cir. 2019)*. To

allege a claim of violation of the constitutional right to due process, a plaintiff must allege that

such deprivation was committed under color of state or federal law (i.e., government-action).

*American Mfrs. Mut. Inc. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)*.

The government-action for purposes of invoking due process guarantees does not apply

to private actors unless (a) the private actor acted with knowledge of and pursuant to

governmental requirements, and (b) the underlying adverse action is attributable to the government. *Id.* Faithful application of the government-action requirement ensures that the prerogative of regulating private businesses remains with the government and respective branches, not the courts. *Id. 526 at 52*. Therefore, private businesses will not be held to constitutional standards unless there is sufficient close nexus between the respective regulating government entity and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the government itself. *Id.*

A movant for injunctive relief must establish that (a) he is likely to succeed on the merits, (b) he is likely to suffer irreparable harm in the absence of injunctive relief, (c) the balance of equities tips in his favor, and (d) an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc., 55 U.S. 7 (2008)*; *Pawelsky v. Cnty of Nassau etc., 2023 WL 4931886, *4 (EDNY, July 31, 2023)*. Preliminary injunctive relief is a matter of equitable discretion which does not automatically follow as a matter of course from a plaintiff's showing of a likelihood of success. *Pawelsky v. Co. of Nassau, New York, 684 F.Supp.3d 73, 81-82 (E.D.N.Y. 2023)*; *Benisek v. Lamone, 585 U.S. 155 (2018)*.

Rather, injunctive relief is an extraordinary remedy, never awarded as of right. *Id.* Therefore, the movant must make a strong showing for relief. *Id.* The right to due process arises when the underlying matters concerns matters protected by the United States Constitution. *Pursell v. Horn, 187 F.Supp.2d 260, 322, 332, 333 (W.D. Pa. 2022)*. It is well settled law that proceedings pursuant to government regulation that may result in the deprivation of licenses, gives rise to the right to due process. *Bell v. Burson, 402 U.S. 535 (1971)*.

"A variety of interest exists that are difficult to define, yet 'comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause.'" *Moriello v. Bd of*

*Immigration Appeals, 2024 WL 1349588, **5 (M.D.N.C., Mar. 29, 2024)*; *Paul v. Davis, 424 U.S. 693, 710 (1976)*. These interests attain this constitutional status by virtue of the fact that they have been previously recognized and protected rights, and as a result, thereafter, mandate procedural due process guarantees whenever the underlying proceeding may remove or significantly alter the protected right or privilege. *Moriello, 2024 WL 1349588, at **5*; *Burson, 402 U.S. at 539*.

"Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy, 367 U.S. 886 (1961)*; *Mathews v. Eldridge, 424 U.S. 319, 334 (1976)*. Instead, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer, 408 U.S. 471, 481 (1972)*. "Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Mathews, 424 U.S. at 334-35*; *Arnett v. Kennedy, 416 U.S. 134, 167-68 (1974)*.

The ultimate balance in determine what process is due under the U.S. Constitution, turns on what judicial-type procedures must be imposed upon the underlying administrative action(s) to assure fairness. *Mathews, 424 U.S. at 348*. "The essence of due process is the requirement that '[the] person in jeopardy of serious loss (be given) notice of the case against him and an opportunity to meet it.'" *Id. 424 U.S. at 348-49*. Fundamental to whether meaningful due process has been afforded for purposes of constitutional satisfaction is whether (1) the person in jeopardy has been provided a meaningful opportunity to present his or her case in an evidentiary hearing, with the right to avail oneself of a subsequent judicial review, and (2) such presentation was permitted prior to the taking of the underling administrative action. *Id. 424 U.S. at 349*.

In determining how much process is due, a court must weigh (1) the private interests affected, (2) the risk of erroneous deprivation through procedures used and the value of other safeguards, and (3) the government's interests. *Spinelli v. City of New York, 579 F.3d 160, 170 (2d Cir. 2009)*. Private interests that pertain to one's livelihood are at the zenith of private interests. *Id. 579 F.3d at 171*. "The Supreme Court has 'repeatedly recognized the severity of depriving someone of his or her likelihood.'" *FDIC v. Mallen, 486 U.S. 230, 243 (1988)*; *Spinelli, 579 F.3d at 171*.

Similarly, where the effected private interest cannot simply be made whole by simply reinstating the reinstating the interest, the requirement of meaningful notice and a meaningful opportunity to be heard are at their zenith. *Id.* The consideration of "the risk of an erroneous deprivation" element for purposes of due process consideration requires scrutiny of the underlying notice and opportunity to be heard procedures. *Id.*

"Notice, to comply with due process requirements,…must set forth [in writing] the alleged misconduct with particularity." *Id. 579 F.3d at 171-72*. Although the particularity may vary, it must, nonetheless, set forth specific acts or partners of conduct, not general, conclusory charges unsupported by specific factual allegations. *Id. 579 F.3d at 172*. Furthermore, the degree of required specificity increases with the significance the interests at stake with one's interests in their livelihood being among those interests that are at the zenith of interests, requiring more specificity. *Id.* Furthermore, adequacy of a notice depends on much more than not obstructing a lawyer's investigation. *Id.*

"Another key element of due process is notice of proceedings." *Martinez v. McAleenan, 385 F.Supp.3d 349, 357 (S.D.N.Y. 2019)*. "As the Supreme Court has stated, due process right to be heard 'has little reality or worth unless one is informed that the matter is pending and can

choose for himself whether to appear or default, acquiesce or contest." *Id.* *"'The purpose of notice under the Due Process Clause is to apprise affected individual of, and permit adequate preparation for, an impending 'hearing.'" Id.* "Logically, without service, the person cannot have notice, and without notice, Plaintiff cannot assert any challenge either to the reinstatement notice or procedure itself, or to the underlying order." *Id.* "'The essence' of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner at a meaningful time.'"

<u>In the instant case</u>, the underlying alleged action is attributable to the government (i.e., NIH). Such is attributable and therefore, government-action because the Defendants alleged that the action came at the demand and direction of NIH. Moreover, even if it were not the case that NIH had not allegedly directed the Defendants to take the underlying action, removing Mr. Pasinetti from the grant award, the claims are so closely related to NIH operations with which the Defendants are required to comply with that the Defendants' underlying removal of Mr. Pasinetti from the grant award constitutes government-action.

Additionally, the Defendants have not afforded Mr. Pasinetti due process, no notice or opportunity to be heard, of any kind. The only written notice Mr. Pasinetti received was well more than a year earlier, at a time when there was no deprivation. Instead, Mr. Pasinetti was required to perform unconscious bias training. As such, that notice, as a matter of law, would not satisfy due process mandates where Mr. Pasinetti has suffered adverse employment action. (*See Allessi v. New York State Dep't of Corrections and Community Supervision, 16 F.Supp.3d 221, 227 (W.D.N.Y. 2014)* holding in pertinent part, "[a]n adverse employment action is a materially adverse change in the terms and conditions of employment…To be materially adverse a change

in working conditions must be more disruptive than a mere inconvenience or alteration of job responsibilities.)

Mr. Pasinetti's removal from the NIH Award resulted in Mr. Pasinetti losing hundreds of thousands of dollars. Furthermore, Defendants' blocking of Mr. Pasinetti's appointment of staff, and further grant work constitutes further adverse employment, of greater economic proportions, implicating clear concerns of whether Mr. Pasinetti will continue to be employed by the Defendant Mount Sinai. The Defendants' attempt to disenfranchise Mr. Pasinetti as to VA Grants constitutes adverse employment action, all in instances where Mr. Pasinetti has not been provided any notice of misconduct or an opportunity to be heard.

Therefore, the Court should decide that the Plaintiff would prevail on a showing that the Defendants have failed to provide Mr. Pasinetti with due process.

## POINT TWO

**THE COURT SHOULD GRANT INJUNCTIVE RELIEF IN THAT MR. PASINETTI HAS SHOWN THAT HE WOULD SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION.**

In absence of enjoining the Defendants, Mr. Pasinetti will continue to suffer irreparable harm, violating Plaintiff's constitutional right to due process under the Fifth Amendment and Fourteenth Amendment of the United States Constitution.

Where the rights at issue are constitutional in nature, irreparable harm is presumed. *Elrod v. Burns, 427 U.S. 347, 373 (1976)*; *Donohue v. Mangano, 886 F.Supp.2d 126, 150 (E.D.N.Y. 2012)*; *Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996)*; *Agudath Israel of America v. Cuomo, 983 F.3d 620 (2d Cir. 2020)*; *Weisshaus v. Cuomo, 512 F.Supp.3d 379, 3589 (W.D.N.Y. 2021)*. The right to due process is integral to the entire adversary process embodied in our constitution. *Chambers v. Baltimore etc., 207 U.S. 142, 148 (1907)*. For purposes of proceedings, at all three-

tier levels research misconduct proceedings, *42 C.F.R. § 93* embodies due process (i.e., *42 C.F.R. § 93.310(c)* requires notice of the underling allegations). *Houser v. Feldman, 2021 WL 4963534 (E.D. Pa, Oct. 26, 2021)*. Concerns of due process violations amid the three-tier research misconduct proceeding may abound for irreparable injury and injunction purposes, provided that such pertain to ascertainable property rights concerns and not reputations generally, and do not seek to permanently join the proceeding, and seek to resolve the underlying matter expeditiously. *Id.*

<u>In the instant case</u>, simply reinstating Mr. Pasinetti to the underlying NIH Award and enjoining the Defendants from unduly removing Mr. Pasinetti from other, particularly in absence of injunctive relief, is inadequate because the economic harm has been done, the Defendants are damaging Mr. Pasinetti's reputation, and the Defendants continue to pursue basely employment actions for purposes of placing Mr. Pasinetti in a hostile work environment.

Therefore, the Court should find that Plaintiff has established irreparable harm.

### POINT THREE

**THE COURT SHOULD GRANT INJUNCTIVE RELIEF IN THAT PLAINTIFF HAS SHOWN THAT THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFF'S FAVOR, AND FOR THE SAME REASONS, ISSUANCE OF AN INJUNCTION IS IN THE PUBLIC INTEREST.**

The public's interest in ensuring that the Defendants understand and comply with their due process obligations tips the balance of hardships decidedly in favor of Mr. Pasinetti.

Where an injunction protects a legal or constitutional right from being infringed upon, the balance of hardship tips in favor of the party whose lawful or constitutional rights would be infringed upon. *Supplement Manufacturing Partner, Inc. etc. v. Healthy Again, LLC et. al., 2023 WL 5278110, *6 (E.D.N.Y., Aug. 16, 2023)*. <u>In the instant case</u>, Plaintiff's right to due process will be irreparably harmed by the process the Defendants are using to carry out their due process

obligation, which is providing Mr. Pasinetti no process at all. Therefore, the Defendants' systemic refusal to comply with due process mandates offends the constitutional notion of fair play and justice. The Defendants have not provided Mr. Pasinetti with any notice regarding the intent to remove Mr. Pasinetti, or an opportunity to be heard before taking the underlying administrative action. As such, there is no articulable prejudice to the Defendant.

Therefore, the Court should conclude that the balance of hardships tips decidedly in the Plaintiff's favor and that the public interests are served by enjoining the Defendants.

## **CONCLUSION**

Plaintiff will rely upon the foregoing for purposes of arguing that the Court issue the proposed order, enjoining the Defendants.

_E. Dubois Raynor, Jr._
E. Dubois Raynor, Jr.