UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIULIO MARIA PASINETTI,

       Plaintiff,

       - against -

ICAHN SCHOOL OF MEDICINE AT MOUNT
SINAI, JESSICA MOISE, ERIC J. NESTLER,
and BARBARA G. VICKREY,

           Defendants.

Civil Action No. 1:24-cv-07688-AS

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**ABELL ESKEW LANDAU LLP**

Scott R. Landau
Olivia Jecklin
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7340
slandau@aellaw.com
*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ..................................................**Error! Bookmark not defined.**

STATEMENT OF FACTS ..................................................................... 3

PROCEDURAL HISTORY.................................................................... 5

ARGUMENT ......................................................................................... 6

    A.    Legal Standard Under Fed. R. Civ. P. 12(b)(6) .................................... 6

    B.    Plaintiff's Claims Should All be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) ............................................................................... 7

        1.    Plaintiff's First Cause of Action (for Defamation Per Se) Should Be Dismissed ............................................................. 7

        2.    Plaintiff's Second Cause of Action (For Hostile Work Environment Under New York State and New York City Human Rights Laws) Should Be Dismissed............................................. 9

        3.    Plaintiff's Third Cause of Action (for Retaliation Under The Federal and State Constitutions) Should Be Dismissed.......................... 10

        4.    Plaintiff's Fourth Cause of Action (For Violation of the "Right to Contract" Under 42 U.S.C. § 1981) Should Be Dismissed ..................... 11

        5.    Plaintiff's Fifth Cause of Action (for "Tortious Interference With A Contract") Should Be Dismissed ........................................ 12

        6.    Plaintiff's Sixth Cause of Action (for Negligent Infliction of Emotional Distress) Should Be Dismissed ............................... 14

        7.    Plaintiff's Seventh Cause of Action (for "Whistleblower Retaliation Pursuant to 5 U.S.C. § 2302(b)(8)") Should Be Dismissed.......................................................................... 15

CONCLUSION.................................................................................... 17

<u>**TABLE OF AUTHOITIES**</u>

**Page(s)**

**Cases**

*Albert v. Carovano,*
   851 F.2d 561 (2d Cir. 1988) ........................................................................................ 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................... 7

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................... 6

*Chandok v. Klessig,*
   632 F.3d 803 (2d Cir. 2011) ..................................................................................... 7, 8

*Cortes v. Twenty-First Century Fox Am., Inc.,*
   285 F. Supp. 3d 629 (S.D.N.Y.), *aff'd sub nom. Cortes v. 21st Century Fox Am., Inc.,*
   751 F. App'x 69 (2d Cir. 2018) ................................................................................ 13

*Dove v. Fordham,*
   56 F. Supp. 2d 330 (S.D.N.Y. 1999) .................................................................... 11, 12

*Green v. City of Mount Vernon,*
   96 F. Supp. 3d 263 (S.D.N.Y. 2015) ........................................................................ 14

*Henry v. Fox News Network LLC,*
   629 F. Supp. 3d 136 (S.D.N.Y. 2022) ...................................................... 6, 8, 12, 13

*Jones v. Cuomo,*
   542 F. Supp. 3d 207 (S.D.N.Y. 2021) ........................................................................ 7

*L-7 Designs, Inc. v. Old Navy, LLC,*
   647 F.3d 419 (2d Cir. 2011) ........................................................................................ 7

*M.J. & K. Co. v. Matthew Bender & Co.,*
   220 A.D.2d 488 (1995) .............................................................................................. 13

*Manigaulte v. C.W. Post of Long Island Univ.,*
   659 F.Supp.2d 367 (E.D.N.Y. 2009) ........................................................................ 11

*Massaro v. Dep't of Educ. of City of New York,*
   121 A.D.3d 569 (1st Dep't 2014) .............................................................................. 10

*Medtech Prod. Inc. v. Ranir, LLC,*
   596 F. Supp. 2d 778 (S.D.N.Y. 2008) ...................................................................... 12

*Nat'l Treasury Emps. Union v. Egger,*
   783 F.2d 1114 (D.C. Cir. 1986) ................................................................................ 17

*Odom v. Columbia Univ.,*
   906 F. Supp. 188 (S.D.N.Y. 1995) ........................................................................... 11

*People by James v. Nat'l Rifle Ass'n of Am., Inc.,*
   75 Misc. 3d 1000 (N.Y. Sup. Ct. 2022), *aff'd sub nom. People v. Nat'l Rifle Ass'n of*
   *Am.,* 223 A.D.3d 84 (2023) ..................................................................................... 10

*Rendell-Baker v. Kohn,*
   457 U.S. 830 (1982) ................................................................................................... 11

*Reyes v. Coll. of Sci. Admin. Rochester Inst. of Tech.,*
   51 F. Supp. 3d 275 (W.D.N.Y. 2014) ...................................................................... 11

*Sanderson v. Leg Apparel LLC*,
    2020 WL 7342742 (S.D.N.Y. Dec. 14, 2020) ................................................ 14, 15
*Sotomayor v. City of New York*,
    862 F. Supp. 2d 226 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) .............................. 9
*Spencer-Smith v. Ehrlich*,
    2024 WL 3291803 (S.D.N.Y. July 3, 2024) ............................................................ 7
*Tavolini v. Mount Sinai Med. Ctr.*,
    984 F. Supp. 196 (S.D.N.Y. 1997), *aff'd sub nom. Tavoloni v. Mount Sinai Med. Ctr.*,
    198 F.3d 235 (2d Cir. 1999) .................................................................... 11
*Truman v. Brown*,
    434 F. Supp. 3d 100 (S.D.N.Y. 2020) ............................................................ 14
*White v. St. Joseph's Hosp.*,
    369 F. App'x 225 (2d Cir. 2010) ................................................................ 11
*Williams v. Victoria's Secret*,
    2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) .................................................... 9, 10

## Statutes

42 U.S.C. § 1981 ...................................................................... 1, 2, 6, 11, 12
42 U.S.C. § 241 .............................................................................. 16
42 U.S.C. § 283a-4 ........................................................................... 8
5 U.S.C. § 2302(a)(2)(D) .................................................................... 15
5 U.S.C. § 2302(b)(8) .......................................................... 1, 2, 6, 15, 16, 17
Consolidated Appropriations Act, 2022 (Public Law 117-113), Division H, Title II,
    Section 239 ............................................................................... 8
N.Y. Exec. Law § 296(1)(a) ................................................................... 9

## Other Authorities

2 C.F.R. § 200.340(a) ........................................................................ 16
45 C.F.R. § 75.372 .......................................................................... 8, 9
Fed. R. Civ. P. 12(b) ...................................................................... 10, 17
Fed. R. Civ. P. 12(b)(6) .................................................................. 1, 2, 6, 7
Fed. R. Civ. P. 15 ............................................................................ 6
N.Y.C. Admin. Code § 8-107(1) ................................................................ 9

## Regulations

U.S. Department of Health and Human Services National Institutes of Health, April 2024 .... 8, 16

## PRELIMINARY STATEMENT

The Icahn School of Medicine at Mount Sinai ("ISMMS"), Jessica Moise, Eric J. Nestler, and Barbara G. Vickrey (collectively "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Giulio Maria Pasinetti's First Amended Complaint (the "First Amended Complaint" or "FAC").

In the First Amended Complaint, Plaintiff – a former ISMMS faculty member [1] – purports to assert seven (7) separate claims against Defendants, for: (1) Defamation *Per Se*; (2) Hostile Work Environment; (3) First Amendment Retaliation; (4) Deprivation of Right to Contract under 42 U.S.C. § 1981; (5) Tortious Interference With Contract; (6) "Emotional Distress"; and (7) "Whistleblower Retaliation Pursuant to 5 U.S.C. § 2302(b)(8)." *See generally* FAC. All of these claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

*First*, Plaintiff's defamation *per se* claim should be dismissed for failure to allege that the statements Defendants allegedly "published" were false in the first place. This claim is also ripe for dismissal because the subject statements were made pursuant to ISMMS's legally mandated reporting duties and thus cannot serve as the basis for liability in a defamation action.

*Second*, Plaintiff's claim for hostile work environment under the New York State and New York City Human Rights Laws should be dismissed for failure to allege that he was actually subject to a hostile work environment, much less one that was created "because of" his status as a member of a protected class. What is more, Plaintiff wholly fails to allege that he was even a member of any protected class at all.

---

[1]    By letter dated January 14, 2025, Plaintiff was notified of his termination from the ISMMS for cause. To date, Plaintiff has not filed an appeal.

*Third*, Plaintiff's claim for "first amendment" retaliation under the Federal and State Constitutions should be dismissed because none of the Defendants in this case are alleged to be (nor actually were) state actors at the time of the events alleged in the First Amended Complaint.

*Fourth*, Plaintiff's claim for violation of the "right to contract" under 42 U.S.C. § 1981 should be dismissed for failure to allege what his (purportedly) protected characteristics are, much less how he was "discriminated" against based on them, as is required to state a claim under § 1981.

*Fifth*, Plaintiff's tortious interference with contract claim should be dismissed for failure to allege that he was a party to a contract that was interfered with by Defendants *at all*, much less one that was breached as a result of a Defendants' "wrongful means," as is required to state a claim for this tort.

*Sixth*, Plaintiff's claim for negligent infliction of emotional distress should be dismissed for failure to allege any of the required elements of this tort, including threat of physical injury or special circumstances, extreme or outrageous conduct, or any actual emotional distress. Like the rest of his claims, Plaintiffs allegations are wholly conclusory and fail to state a claim.

*Seventh*, Plaintiff's claim for "Whistleblower Retaliation" under 5 U.S.C. § 2302(b)(8) should be dismissed not only because Defendants are not federal employers and Plaintiff is not a federal employee (as are required for this law to apply), but Plaintiff has not actually alleged that he engaged in whistleblower activity or that Defendants took "protected personnel practices" as a result of his activity.

Accordingly, and for the reasons set forth herein, Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

## STATEMENT OF FACTS

The facts set forth herein are drawn from: (i) Plaintiff's allegations in the First Amended Complaint (which are accepted as true only for purposes of the instant motion); (ii) judicially noticeable documents of public record; and (iii) documents incorporated by reference into the First Amended Complaint, which, as set forth more fully (*supra* at pp. 7), may be considered by this Court on a Motion to Dismiss without converting the motion into one for summary judgment.

Plaintiff is a physician licensed to practice medicine in Europe who was an ISMMS faculty member working as a scientist, researcher, and educator. *See* FAC ¶ 4.

On May 16, 2023, Plaintiff's ISMMS supervisor, Barbara C. Vickrey, MD, MPH, Chair of the ISMMS Department of Neurology, wrote to Eric Nestler, MD, PhD, the ISMMS Dean for Academic and Scientific Affairs, recommending that Plaintiff be disciplined for engaging in inappropriate conduct towards staff. FAC ¶ 17; *see id.* ¶¶ 14, 16. In her May 16, 2023 letter (the "May 16 Vickrey Letter") – which is liberally quoted from in Plaintiff's First Amended Complaint and is thus integral thereto and can be considered incorporated by reference therein despite having not been attached as an exhibit to it (*see supra* at pp. 7)[2] – Dr. Vickrey specifically recommended to Dr. Nestler that Plaintiff be issued a "final warning" and that he be "restricted from having any work related events either in or outside the office where alcohol and/or controlled substances are served and/or used." FAC ¶ 18; *see also* Docket, Entry No. 38(D).

By letter to Plaintiff also dated May 16, 2023 (the "May 16 Nestler Letter"), Dr. Nestler advised Plaintiff that he accepted Dr. Vickrey's recommendation and issued Plaintiff a disciplinary

---

[2] A copy of the May 16 Vickrey Letter was previously submitted to the Court in connection with Defendants' Opposition to Plaintiff's Application for a Preliminary Injunction as Exhibit D to the Declaration of Clarissa Jones-Winter dated December 23, 2024 ("Jones-Winter Decl."). *See* Civil Docket for Case # 1:24-cv-07688 ("Docket"), Entry No. 38.

final warning. *See* FAC ¶ 21; *see also* Docket, Entry No. 38(E). In the May 16 Nestler Letter, Dr. Nestler stated that Plaintiff's behavior warranted "disciplinary action in the form of a final warning, restrictions on the scope of work events outside the office and closer monitoring of the climate with [his] laboratory staff." FAC ¶ 21; *see also* Docket, Entry No. 38(E). Dr. Nestler further advised that ISMMS would "perform regular (at least quarterly) climate reviews of [his] laboratory for the foreseeable future" and that Plaintiff was "expected to register for and attend at least one unconscious bias training provided by the Office for Diversity and Inclusion within the next six (6) calendar months." FAC ¶ 21; *see also* Docket, Entry No. 38(E). The May 16, 2023 Nestler Letter further stated that "Any future similar conduct-related incidents will result in termination of your employment" and that "if it is discovered that you retaliate in any way with regard to this incident, you will be considered out of compliance with our Code of Conduct, and your [sic] will be subject to immediate termination." FAC ¶ 22; *see also* Docket, Entry No. 38(E).

The May 16 Nestler Letter expressly notified Plaintiff of his "right to appeal this decision to the ISMMS Faculty Disciplinary Tribunal" within ten (10) business days of his receipt of the letter pursuant to the "appeal procedures and details . . . set forth in greater detail in the Faculty Handbook" and stated that if "no request for appeal is filed, this discipline will become final." FAC ¶ 21; *see also* Docket, Entry No. 38(E). The May 16 Nestler Letter included a hyperlink to the Faculty Handbook so that Plaintiff could easily access it online. *See id*. Plaintiff did not appeal Dr. Nestler's decisions or the discipline imposed pursuant to the May 16 Nestler Letter. *See* FAC ¶ 23. On May 27, 2023 the proposed discipline became final and unappealable. *See* FAC ¶ 24.

On or about August 28, 2024, "well more than a year after the Defendants had declared the purely internal matter" of the May 2023 discipline "to be final," Defendants advised Plaintiff that they had communicated with the National Institutes of Public Health ("NIH") regarding his May

2023 discipline. FAC ¶¶ 13, 26-27. Plaintiff alleges that Defendants did so maliciously and in retaliation for his suing ISMMS in June 2024 "for various due process violations" (the "June 2024 Lawsuit"), which lawsuit Plaintiff acknowledges was "resolved" and voluntarily dismissed shortly thereafter on July 17, 2024. FAC ¶¶ 11-12, 29-30; *see* Civil Docket for Case No. 1:24-cv-4510, Entry No. 11. Plaintiff alleges that "in response," the NIH "ordered the Defendants to further punish [him] by restricting his work, effectively placing Mr. Pasinetti in a proverbial rubber room of sorts, as he continued to be employed by the Defendants. FAC ¶ 28.

Plaintiff further alleges that Defendants contacted the United States Department of Veterans Affairs ("V.A."), a "wholly independent entity," "lobbying that the VA terminate Mr. Pasinetti's grant work with the V.A." that is also "pursuant to NIH issued contracts." FAC ¶ 33-34. Plaintiff claims that Defendants did so to "gain[] V.A.'s suspension of Dr. Pasinetti's work at the VA on NIH issued contract." *Id*. ¶ 37.

## PROCEDURAL HISTORY

On June 12, 2024, Plaintiff initiated the July 2024 Lawsuit, alleging that ISMMS violated his due process rights because it did not provide for discovery, a right to counsel, and an adversarial hearing in connection with research misconduct allegations against him. *See* Civil Docket for Case No. 1:24-cv-4510, Entry No. 2, at ¶¶ 13-14. On July 17, 2024, Plaintiff voluntarily dismissed the June 2024 Lawsuit. *See id.* Entry No. 11; FAC ¶ 12.

Plaintiff initiated this action on October 9, 2024 by filing a Complaint (the "Complaint") in which Plaintiff asserted six (6) causes of action against Defendants for: (1) "Defermantion" [sic] *Per Se*; (2) Hostile Work Environment in Violation of the City and State Human Rights Laws; (3) Retaliation for Violation of His Right to Free Speech/Expression Under the First Amendment of

the State and Federal Constitutions; (4) Deprivation of Right to Contract under 42 U.S.C. § 1981; (5) Tortious Interference with a Contract; and (6) Emotional Distress. *See* Docket, Entry No. 1.

On November 21, 2024, Plaintiff exercised his right to amend his pleading once as a matter of course pursuant to Fed. R. Civ. P. 15 by filing his First Amended Complaint. *See* Docket, Entry No. 23. In the FAC, Plaintiff asserts the same six (6) causes of action asserted in his initial Complaint and added one (1) additional cause of action for purported "Whistleblower Retaliation Pursuant to 5 U.S.C. § 2302(b)(8)." *See id.*

On December 6, 2024, approximately two (2) months after Plaintiff filed this lawsuit, Plaintiff filed an Application for Injunctive Relief (the "Injunction Application"). *See* Docket, Entry No. 29. On December 24, 2024, Defendants filed their opposition to the Injunction Application.

## **ARGUMENT**

### A. **Legal Standard Under Fed. R. Civ. P. 12(b)(6)**

To survive a Rule 12(b)(6) motion, the plaintiff must allege a legally and factually plausible cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 144 (S.D.N.Y. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Claims merely 'consistent' with liability are insufficient, and the 'factual allegations must be enough to raise a right to relief above the speculative level." *Henry*, 629 F. Supp. 3d at 144 (quoting. *Twombly*, 550 U.S at 570 (2007).

On a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Nor are courts required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id.* In addition, a district court may also consider "documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Spencer-Smith v. Ehrlich*, 2024 WL 3291803, *18 (S.D.N.Y. July 3, 2024) (citations omitted); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (affirming consideration of emails not attached to the complaint on motion to dismiss). Courts can take judicial notice of "documents retrieved from official government websites" or other "relevant matters of public record." *Jones v. Cuomo*, 542 F. Supp. 3d 207, 211 n.1 (S.D.N.Y. 2021) (quoting *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)).

**B.**    **Plaintiff's Claims Should All be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)**

As is set forth more fully below, all of Plaintiff's claims as set forth in the First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

1.    *Plaintiff's First Cause of Action (for Defamation Per Se) Should Be Dismissed*

Under New York State law, a plaintiff may recover for defamation by proving that a defendant "published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory per se or caused the plaintiff special harm, so long as the statement was not protected by privilege." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011).

In the FAC, Plaintiff alleges that Defendants defamed him by "publishing" the May 16 Vickery Letter and the May 16 Nestler letter to NIH. FAC ¶¶ 43-47. Notably, nowhere in the FAC

does Plaintiff allege that the statements made by ISMMS to NIH (notifying NIH of the conduct allegations and the discipline imposed) were actually false. *See generally* FAC. Nor could he, as even Plaintiff cannot (and does not) dispute that the content of those communications was accurate. "[T]ruth," of course, "is an absolute, unqualified defense to a civil defamation action." *See Henry*, 629 F. Supp. 3d at 146 (quoting *Cortes v. Twenty-First Century Fox America, Inc.*, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018)). For this reason alone, Plaintiff's defamation claim must fail.

Plaintiff's defamation claim also fails because ISMMS's "publication'" to NIH was made pursuant to ISMMS's legal duties. Under 42 U.S.C. 283a-4 and NIH guidance documents, institutions (such as ISMMS) that receive funds through an NIH grant or cooperative agreement are required to notify NIH within thirty (30) days after "individuals [who are] identified as a principal investigator or as key personnel in an NIH notice of award are removed from their position *or are otherwise disciplined due to concerns about harassment, bullying, retaliation, or hostile working conditions*." 42 U.S.C. § 283a-4 (emphasis added); *see* 45 C.F.R. § 75.372*;* Consolidated Appropriations Act, 2022 (Pub. L. 117-113), Division H, Title II, Section 239; NIH Grants Policy Statement, U.S. Department of Health and Human Services National Institutes of Health, April 2024, p. IIA-112 (available at the NIH official website at https://grants.nih.gov/policy-and-compliance/nihgps). ISMMS's alleged "publication" of the May 2023 discipline letters to NIH was required under law and thus "cannot serve as the basis for the imposition of liability in a defamation action'" as they were made pursuant to its legal duties. *Chandok*, 632 F.3d at 814 (quoting *Toker v. Pollak*, 44 N.Y.2d 211, 218 (1978). Notably, had ISMMS *not* so "published" to NIH, it would have risked losing all of its NIH grant funding

across the board. *See* 45 C.F.R. § 75.372. Plaintiff's defamation *per se* claim thus fails to state a claim for defamation and must be dismissed.

### 2. Plaintiff's Second Cause of Action (For Hostile Work Environment Under New York State and New York City Human Rights Laws) Should Be Dismissed

Section 296 of Article 15 of the New York State Human Rights Law ("NYSHRL") makes it unlawful for an employer to discriminate based on "age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence." N.Y. Exec. Law § 296(1)(a). The New York City Human Rights Law ("NYCHRL") similarly prohibits discrimination in employment based on "actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person." N.Y.C. Admin. Code § 8-107(1). Claims under NYSHRL are "analyzed under the same standards as similar claims under federal law," and require the plaintiff to show that the conduct at issue "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [status as a member of an enumerated class]." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 260–61 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007)); *see also Williams v. Victoria's Secret*, 2017 WL 1162908, at *7–*8 (S.D.N.Y. Mar. 28, 2017) (a "conclusory" allegation is "insufficient to create an inference of discriminatory intent" and "without more, is not enough to survive a motion to dismiss.").

None of Plaintiff's allegations in the First Amended Complaint actually allege a hostile work environment, much less one that was created "because of" Plaintiff's status as a member of

9

a protected class. *See id.* In fact, nowhere does Plaintiff indicate what purportedly protected classes he belongs to in the first place! The First Amended Complaint is similarly devoid of actual factual allegations that Plaintiff was subjected to a hostile or abusive environment at all; at *most*, Plaintiff asserts but "conclusion allegations" that are "insufficient to create an inference of discriminatory intent" and are "not enough to survive a motion to dismiss." *Williams v. Victoria's Secret*, 2017 WL 1162908, at *7-*8 (S.D.N.Y. Mar. 28, 2017). Plaintiff's hostile work environment claims accordingly must be dismissed pursuant to Fed. R. Civ. P. 12(b). *See Sotomayor*, 862 F. Supp. 2d at 261 (dismissing the plaintiff's hostile work environment claims under NYSHRL and NYCHRL where plaintiff could not show discrimination); *Williams v. Victoria's Secret*, 2017 WL 1162908, at *8-*9 (dismissing NYSHRL claims where allegations "do not raise an inference" or "plausibly support even a minimal inference of discriminatory motive.").

### 3.   *Plaintiff's Third Cause of Action (for Retaliation Under The Federal and State Constitutions) Should Be Dismissed*

To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *People by James v. Nat'l Rifle Ass'n of Am., Inc.*, 75 Misc. 3d 1000, 1004 (N.Y. Sup. Ct. 2022), *aff'd sub nom. People v. Nat'l Rifle Ass'n of Am.*, 223 A.D.3d 84 (2023) (quoting *Dolan v. Connolly*, 794 F3d 290, 294 (2d Cir 2015)). Notably, First Amendment retaliation claims under the New York State Constitution and the Federal Constitution consist of the same elements and can thus be analyzed concurrently. *See, e.g.*, *Massaro v. Dep't of Educ. of City of New York*, 121 A.D.3d 569, 569–70 (1st Dep't 2014)

(citing to *Ruotolo v. City of New York*, 514 F3d 184, 188 (2d Cir 2008) in analyzing Federal and New York State Constitution retaliation claims).

First Amendment retaliation claims may only be brought against a state or a state actor, and in this case, none of the Defendants are alleged to be (or actually are) state actors; Plaintiff's First Amendment retaliation claim thus fails for this threshold reason and must be dismissed. *See Reyes v. Coll. of Sci. Admin. Rochester Inst. of Tech.*, 51 F. Supp. 3d 275, 278 (W.D.N.Y. 2014) (dismissing the plaintiff's First Amendment retaliation claim where there was no allegation that the defendant was a state actor); *Manigaulte v. C.W. Post of Long Island Univ.*, 659 F.Supp.2d 367, 379 (E.D.N.Y. 2009) (same); *see also White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[a]lthough private hospitals, like Defendant, are regulated by the state and required to obey state laws, they 'are generally not proper § 1983 defendants' as they usually 'do not act under color of state law'"); *Tavolini v. Mount Sinai Med. Ctr.*, 984 F. Supp. 196, 200–04 (S.D.N.Y. 1997), *aff'd sub nom. Tavoloni v. Mount Sinai Med. Ctr.*, 198 F.3d 235 (2d Cir. 1999); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (holding that receipt of public funds does not make a private entity a state actor).

> ### 4.    *Plaintiff's Fourth Cause of Action (For Violation of the "Right to Contract" Under 42 U.S.C. § 1981) Should Be Dismissed*

42 U.S.C. § 1981 seeks to address "actions that were racially motivated and purposefully discriminatory." *Dove v. Fordham*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999); *see also Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir. 1988) ("[s]ection 1981 was intended to combat racial or ethnic discrimination"). To state a claim under 42 U.S.C. § 1981, a plaintiff must allege "(1) [that] the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (including the making and enforcement of contracts)." *Odom v. Columbia Univ.*, 906

11

F. Supp. 188, 194 (S.D.N.Y. 1995) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993)).

As noted above (*infra* at pp. 10), Plaintiff has not alleged what his purportedly protected racial characteristics are, much less how he was "discriminated" against based on them, as is required to state a claim under § 1981. *See Dove*, 56 F. Supp. at 338 (dismissing § 1981 claim where the complaint "lack[ed] allegations of racial animus and intentional discrimination"). Nor do his allegations arguably give rise to even an inference of racial or ethnic discrimination or animus. Plaintiff's § 1981 claim not only lacks merit, it borders on frivolous; it too should be dismissed.

### 5.    *Plaintiff's Fifth Cause of Action (for "Tortious Interference With A Contract") Should Be Dismissed*

To state a claim for tortious interference with contract, a plaintiff "must allege five elements: '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom.'" *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006)); *see also Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 152 (S.D.N.Y. 2022). A plaintiff must specifically allege "that the defendant used 'wrongful means' to procure the third party's breach." *Medtech v. Ranir*, 596 F. Supp. 2d at 813 (citing *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001)). "The New York Court of Appeals has defined 'wrongful means' to include 'physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure.'" *Id.* (citing *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*,

50 N.Y.2d 183, 191 (1980)). "Persuasion alone" does not constitute "wrongful means," even if such persuasion is "knowingly directed at interference with the contract." *Id.*

 Plaintiff's First Amended Complaint fails to actually identify a contract between himself and a third-party that ISMMS is allegedly interfering with in the first place, as is required to state a claim for tortious interference with contract. The contracts Plaintiff *does* reference in the Complaint (such as the NIH Grant and the IPA) are between <u>ISMMS</u> and government agencies (*see generally* FAC), and of course a party cannot tortiously interfere with its own contracts. *See Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y.), *aff'd sub nom. Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69 (2d Cir. 2018). Even if Plaintiff *were* a party to such contracts (which he does not allege, likely because he is not actually a party to them), Plaintiff does not allege that those contracts have been breached, let alone that Defendants wrongfully procured such breaches, as is also required to state a claim for tortious interference. *See Henry v. Fox News*, 629 F. Supp. 3d at 152 (internal citations omitted) (concluding that the plaintiff failed to plead facts sufficient to support a claim for tortious interference for failing to "identify what provisions of the contract were breached as a result of the acts at issue."). Nor does he allege that such (unidentified and presumably nonexistent) breach was procured by "wrongful means."

 At most, Plaintiff asserts mere "conclusory allegations without factual support" which of course are "insufficient to state a cause of action" for tortious interference. *M.J. & K. Co. v. Matthew Bender & Co.*, 220 A.D.2d 488, 490 (1995) (concluding that the plaintiffs' "mere contentions that third parties cancelled contracts with them because of the allegedly defamatory remarks made by [the defendant's] representatives, offered with no factual basis to support the

allegations, was insufficient to state a cause of action for tortious interference with contractual relations."). This claim too must be dismissed.

6.    *Plaintiff's Sixth Cause of Action (for Negligent Infliction of Emotional Distress) Should Be Dismissed*

To state a claim for negligent infliction of emotional distress under New York law, a plaintiff must allege that there was "'(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress.'" *Truman*, 434 F. Supp. 3d at 122 (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015)). The conduct at issue must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Goldstein v. Mass. Mut. Life Ins. Co.*, 60 A.D.3d 506, 875 N.Y.S.2d 53, 55 (1st Dep't 2009)). A plaintiff may recover for negligent infliction of emotional distress resulting from either (1) "physical injury or the threat of danger, either to the plaintiff [him]self or to a close family member," *Green v. Mount Vernon*, 96 F. Supp. 3d at 298 (quoting *Vaughn v. Am. Multi Cinema, Inc.*, 2010 WL 3835191, at *5 (S.D.N.Y. Sept. 13, 2010), or (2) a "special circumstance" that creates a genuine likelihood of " serious mental distress." *Sanderson v. Leg Apparel LLC*, 2020 WL 7342742, at *4 (S.D.N.Y. Dec. 14, 2020) (quotations omitted). "Special circumstances" have been recognized, for example, where a hospital negligently informed someone that a parent had died, a provider made a negligent misdiagnosis of serious illness, or there was mishandling of a loved one's remains. *See Truman v. Brown*, 434 F. Supp. 3d 100, 123 (S.D.N.Y. 2020) (collecting cases).

The FAC fails to plead facts consistent with any of these theories. Plaintiff fails to plead any physical injury or threat of danger to himself or any family members, *see Green v. Mount Vernon*, 96 F. Supp. 3d at 298, and none of Plaintiff's allegations constitute a "special

14

circumstance" distressing enough to sustain a claim for negligent infliction of emotional distress.

Plaintiff claims that Defendants "breached [their] duty to the Plaintiff not to abuse its disciplinary

authority and to do so on a fabricated basis" and that this breach "unreasonably endangered the

Plaintiff's well-being," and that such breached involved "extreme" and "outrageous conduct."

FAC ¶¶ 67–70. But this parroting of these common law elements posing as legal conclusions does

not support a negligent infliction of emotional distress claim. *See, e.g., Sanderson v. Leg Apparel

LLC*, 2020 WL 7342742, at *5 (S.D.N.Y. Dec. 14, 2020) ("The Court need not credit Plaintiff's

legal conclusions couched as factual allegations."). This claim too fails as a matter of law and

should be dismissed.

7.    ***Plaintiff's Seventh Cause of Action (for "Whistleblower Retaliation
       Pursuant to 5 U.S.C. § 2302(b)(8)") Should Be Dismissed***

5 U.S.C. § 2302(b)(8) permits federal employees to sue their (federal) employers for

taking adverse employment actions (referred to in the statute as "prohibited personnel practices"

or "PPPs") in retaliation for their participation in "whistleblower activity." *See id.* Adverse so-

called "prohibited personnel practices" include "firing, demotion, denying promotions,

reassignment to less desirable roles, and any other actions that negatively impact the federal

employee's working conditions."[3] And protected "whistleblower activity" includes disclosures

that the employer was either violating a "rule, law, or regulation," or otherwise acting in a way

that demonstrates "gross mismanagement, a gross waste of funds, an abuse of authority, or a

substantial and specific danger to public health or safety." *See* 5 U.S.C. § 2302(a)(2)(D). As a

threshold matter, Plaintiff was not, nor did he allege that he ever was, a federal employee or that

ISMMS was a federal employer at any time relevant to his allegations (nor could he, as he is not

---

[3]    *See* U.S. Dep't of Labor, *Occupational Safety and Health Administration: Whistleblower Protection
Program*, https://www.whistleblowers.gov/know_your_rights.

a federal employee and ISMMS is not a federal employer). *See generally* FAC. Plaintiff's § 2302(b)(8) claim is subject to dismissal for this reason alone.

Nor does Plaintiff actually allege that he engaged in protected "whistleblower activity" within the meaning of § 2302(b)(8). *See generally* FAC. While Plaintiff *alleges* that the June 2024 Lawsuit "complain[ed] about mismanagement of fund awarded by the United States via the NIH," (FAC ¶ 72), in fact, his complaint in that case alleges only that he was denied due process in connection with administrative processes regarding research allegations. *See* Civil Docket for Case # 1:240-cv-2510, Entry No. 2. Plaintiff's claim in the First Amended Complaint that the June 2024 Lawsuit related to "mismanagement of funds" is belied by his own pleadings in that lawsuit, and is disingenuous.

But even assuming, *arguendo*, that the First Amended Complaint *did* sufficiently allege "whistleblower activity" within the meaning of this law, Plaintiff *still* fails to allege that ISMMS engaged in any "prohibited personnel practices" as a result. In the First Amended Complaint, Plaintiff alleges that it was NIH, not ISMMS, that restricted his work on the NIH grant. FAC ¶ 28. This is consistent with the applicable law, under which grant recipients such as ISMMS do not have exclusive decision-making authority regarding grant awards, selection of grant participants, and conditions of participation. *See* 2 C.F.R. § 200.340(a); NIH Grants Policy Statement, U.S. Department of Health and Human Services National Institutes of Health, April 2024, § 8.1.2.6.; 42 U.S.C. § 241 *et. seq* (authorizing the Department of Health and Human Services to make grants subject to conditions imposed by Congress). Plaintiff thus fails to allege that ISMMS took adverse action against him such to state a claim for retaliation under § 2302(b)(8).

Finally, Plaintiff has not alleged exhaustion of statutory remedies, a required prerequisite to filing a § 2302(b)(8) in federal court. *See Nat'l Treasury Emps. Union v. Egger*, 783 F.2d 1114,

16

1117 (D.C. Cir. 1986) (dismissing the complaint for lack of subject matter jurisdiction because "[t]he alleged prohibited personnel practice . . . should be brought initially before OSC."). So even if Plaintiff *had* alleged in the First Amended Complaint all of the requisite elements for a § 2302(b)(8) claim, this cause of action would still be ripe for dismissal for lack of jurisdiction. *See id.* Because the Court lacks jurisdiction to hear this meritless claim, it must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b) and grant such other and further relief as is deemed necessary and appropriate by this Court, for the reasons set forth herein.

Dated: January 27, 2025
New York, New York

ABELL ESKEW LANDAU LLP

By:     /s/ *Scott R. Landau*

Scott R. Landau, Esq.
Olivia Jecklin, Esq.
256 Fifth Avenue, Fifth Floor
New York, NY 10001
(646) 970-7343
slandau@aellaw.com

17